USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 11/9/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

H.A.L. NY HOLDINGS, LLC,

                Plaintiff,

– against –

JOSEPH MICHAEL GUINAN, JR.,

                Defendant.

**OPINION AND ORDER**

18 Civ. 2275 (ER)

Ramos, D.J.:

    H.A.L. NY Holdings LLC ("Plaintiff" or "HAL") brings this action against Joseph Michael Guinan ("Defendant" or "Guinan") for claims arising out of actions taken in his capacity as the chairman and chief executive officer ("CEO") of Advantage Futures, LLC ("Advantage"). Before the Court is Guinan's motion to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C § 1404(a). Doc. 20. For the reasons set forth below, Defendant's motion to transfer is GRANTED.

## I. BACKGROUND

### A. Factual Background

    HAL is a New York limited liability corporation engaged in the business of trading stock index futures and options on stock index futures. Am. Compl. ¶ 4. At all times mentioned in the Amended Complaint, Guinan was chairman and CEO of Advantage, a Futures Commission Merchant registered with the Commodity Futures Trading Commission ("CFTC") under the Commodity Exchange Act. *Id.* at ¶ 5. HAL first opened a futures trading account with Advantage in 2014, which was later transferred to another brokerage firm. *Id.* at ¶ 7. In September 2015, HAL transferred its positions back to Advantage, signed a new Advantage

Futures Client Agreement ("Client Agreement"), and resumed trading under its former account number. *Id.* The Client Agreement contained a forum selection clause which provides in pertinent part that:

> ALL ACTIONS, DISPUTES, CLAIMS OR PROCEEDINGS . . . ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF OR RELATED TO OR FROM THIS AGREEMENT, ANY OTHER AGREEMENT BETWEEN THE CLIENT AND ADVANTAGE OR ANY ORDERS ENTERED OR TRANSACTIONS EFFECTED FOR CLIENT'S ACCOUNTS WHETHER OR NOT INITIATED BY ADVANTAGE SHALL BE ADJUDICATED ONLY IN COURTS . . . WHOSE SITUS IS WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS, AND CLIENT HEREBY SPECIFICALLY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT . . . LOCATED WITHIN THE COUNTY OF COOK, STATE OF ILLINOIS.

(Poronsky Decl., Ex. A ¶ 29).

The Client Agreement required HAL to "at all times maintain such margins and premiums for its account as required from time to time by Advantage . . ." *Id.* ¶ 10. If HAL failed to meet this requirement, the Agreement authorized Advantage to "cover or liquidate any position [HAL] may have with Advantage (including but not limited to whole or partial liquidations of [HAL]'s Account . . . or the straddling of existing open positions if they cannot be satisfactorily liquidated because the market is illiquid or has reached a price limit, or for any other reason)." *Id.*

HAL states that, despite the Client Agreement, Guinan told representatives of HAL at dinner meetings in New York that he had the power to make all decisions for Advantage and that Advantage would not enforce certain margin requirements in HAL's account. Am. Compl. ¶¶ 12, 15. The Amended Complaint characterizes Guinan's relaxation of margin requirements as granting HAL extraordinary latitude to do business in ways that most Advantage customers could not. *Id.* at ¶ 16. HAL states that it subsequently increased its trading activity in reliance upon Guinan's representations. *Id.* at ¶ 17.

HAL alleges that on July 6 and July 7, 2017, Guinan placed an authorized trade in HAL's account and liquidated substantially all of HAL's positions in contravention of his promise not to enforce certain margin requirements in the Client Agreement. Am. Compl. ¶¶ 38, 60-61. Specifically, HAL alleges that on July 6, 2017, Guinan sent HAL an email indicating that Advantage would be taking action on the HAL account to reduce risk, and that HAL attempted to convince Guinan to take no action because the account was fully hedged. *Id.* at ¶ 23. Despite HAL's protests, Guinan informed HAL later that evening that Advantage had placed an options trade in HAL's account and demanded a margin call of $304,000, and he subsequently refused to remove the trade. *Id.* at ¶¶ 36, 38, 46. The next morning, HAL alleges that it agreed to wire Advantage the requested funds by 10:30 a.m. that day and that Guinan promised that Advantage would not enter any further trades on the HAL account. *Id.* at ¶ 47. A representative from HAL called Guinan at 10:51am and Guinan stated on the call that Advantage had not liquidated any of HAL's positions. *Id.* at ¶¶ 51-53. HAL wired $150,000 to Advantage at approximately 12:00 p.m. and later that day Guinan informed HAL that Advantage had already liquidated virtually all of the positions in the HAL account earlier that morning. *Id.* at ¶¶ 51-55, 60.

**B. Procedural Background**

On September 21, 2017, Advantage filed suit against HAL in the United States District Court for the Northern District of Illinois for breach of the Client Agreement to collect the negative balance left in HAL's account. Poronsky Decl., Ex. C. On November 14, 2017, HAL filed an offer of judgment, which Advantage accepted. Poronsky Decl., Ex. D. On November 22, 2017, District Judge Kendall entered a judgment in favor of Advantage, and subsequently entered an amended judgment by agreement of the parties. Poronsky Decl., Ex. E-F. Advantage

states that, to date, HAL has not paid any amount due on that judgment and Advantage continues to pursue post-judgment discovery. Poronsky Decl. ¶10.

In the instant case, HAL seeks to recover damages and lost profits stemming from the unauthorized trade placed on its account on July 6, 2017 and the liquidation of its remaining positions on July 7, 2017. HAL asserts claims for fraud under the Commodity Exchange Act (Counts I, II, and IV); and in the alternative to Counts I and II, for common law gross negligence (Count III); for common law fraud (Count V); and in the alternative to Counts IV and V, for common law negligent misrepresentation (Count VI). Am. Compl. ¶ 1. Invoking the forum selection clause in the Client Agreement, Guinan now moves to transfer this case to the Northern District of Illinois pursuant to 28 U.S.C § 1404(a). Doc. 20.

## II. LEGAL STANDARD

### A. 1404(a) Motion to Transfer Standard

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "The purpose of this provision is to 'prevent waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Tillery v. NYS Office of Alcoholism & Substance Abuse Servs.*, 2013 WL 6405326, at *3 (S.D.N.Y. 2013) (quoting *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 372 (S.D.N.Y. 2006)). "The statute gives the district court wide discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

When determining whether to transfer a case from one judicial district to another, a court

first examines whether the case could have been brought in the other district. *Pence v. GEE Grp., Inc.*, 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017). *See also ICICI Bank, Ltd. v. Essar Global Fund Ltd.*, 2017 WL 122994, at *6 (S.D.N.Y. 2017); *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004); *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998). The parties have previously litigated the related case in the Northern District of Illinois pursuant to the Client Agreement and HAL does not contest that this case could have also been brought there.[1] If there is a forum selection clause at issue, however, the calculus is altered because a valid forum selection clause is given "controlling weight in all but the most exceptional cases." *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 839 (S.D.N.Y. 2017) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013)). A valid forum selection clause alters the usual section 1404(a) analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . .
>
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . . As a consequence, a district court may consider arguments about public-interest factors only. . . .

---

[1] If the case could have been brought in the other district, courts in the Second Circuit consider a number of factors including:

> (1) plaintiff's choice of forum; (2) the convenience to witnesses, (3) the location of relevant documents and ease of access to sources of proof, (4) the convenience of parties to the suit, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, (9) trial efficiency, and (10) the interest of justice, based on the totality of circumstances.

*Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, 2015 WL 1433320, at *7 (S.D.N.Y. Mar. 30, 2015). (quoting *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F.Supp.2d 297, 304 (S.D.N.Y.2012)). These are commonly referred to as "private" and "public-interest" factors. *Pence*, 236 F. Supp. 3d at 849.

> Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations.

*Atlantic*, 571 U.S. at 63-64. Because the section 1404(a) analysis is substantially different if a forum selection clause applies, we turn next to the question of whether HAL's claims are governed by the forum selection clause contained in the Client Agreement.

## III. DISCUSSION

### A. Enforceability of the Forum Selection Clause

The Second Circuit has held that a forum-selection clause is "presumptively enforceable" if the moving party can demonstrate that: (1) the clause was "reasonably communicated to the party resisting enforcement"; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims. *Pence*, 236 F. Supp. 3d at 851 (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)). If these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid." *Martinez v. Bloomberg LP*, 740 F.3d 211, 221 (2d Cir. 2014) (quoting *Phillips*, 494 F.3d at 383-84). HAL does not contest that the clause was reasonably communicated to it – nor could it given that the forum selection clause was contained in a contract HAL signed and was sufficiently sophisticated to understand. The forum selection clause is also mandatory, rather than permissive, as its "language is obligatory and clearly manifests an intent to make venue compulsory and exclusive." *Pence*, 236 F. Supp. 3d at 852 (internal quotation marks and citation omitted).

6

As for whether the forum selection clause encompasses Plaintiff's claims in this lawsuit, HAL states in passing that the allegations in the Amended Complaint "have nothing to do with [the Client Agreement]" because "the issues in this case relate to alleged misrepresentations and fraud." Pls. Mem. at 1, 5. HAL claims that it was damaged when Advantage placed an unauthorized trade on its account and liquidated its positions. Compl. ¶ 10. The forum selection clause, by its clear terms, governs "ALL ACTIONS, DISPUTES, CLAIMS OR PROCEEDINGS . . . ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH, OUT OF OR RELATED TO OR FROM . . . ANY ORDERS ENTERED OR TRANSACTIONS EFFECTED FOR CLIENT'S ACCOUNTS." Poronsky Decl., Ex. A ¶ 29. This case clearly relates to and arises out of orders entered or transactions effected in the HAL account. HAL's claims of statutory and common law misrepresentation and fraud are not exempt from the forum selection clause merely because they do not allege breach of contract. *See Phillips*, 494 F.3d at 388 (noting that federal courts have routinely rejected the notion that statutory claims are exempt from provisions governing disputes between contracting parties).

HAL also states that the forum selection clause does not encompass actions against officers of Advantage, and that "[n]othing in the clause says that it was intended to encompass non-parties." Pls. Mem. at 1, 5. The scope of the clause is framed in terms of actions and transactions, not parties; it applies to all actions that relate to or arise out of orders or transactions in the HAL account, not only those in which Advantage is a party. Thus, the forum selection clause encompasses HAL's claims in this case and is presumptively enforceable. *Phillips*, 494 F.3d at 383. HAL has not rebutted that presumption by showing that enforcement of the clause is "unreasonable or unjust, or that the clause was invalid." *Id.* at 384. Instead, HAL has argued that Guinan is not entitled to enforce it. Pls. Mem. at 5-9.

7

## B. Enforcement of the Forum Selection Clause by a Non-signatory

HAL devotes most of its brief to the argument that Guinan, as a non-signatory to the Client Agreement, is not entitled to enforce the forum selection clause. Pls. Mem. at 5-9. However, "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). The Second Circuit has held:

> a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is "closely related" to another signatory. In such instances, the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is "foreseeable" to the signatory against whom the non-signatory wishes to enforce the forum selection clause.

*Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (citation and footnote omitted). This rule "prevent[s] parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations." *Id.* at 722 (quotation marks omitted). HAL limits its discussion of the "closely related" test to distinguishing the facts of *Magi XXI* and *Aguas Lenders*. Pls. Mem. at 7-9. However, these arguments constitute "a distinction without a difference, given that the standard applied by these cases is one of whether the entities are 'closely related'" and the test "is not limited to circumstances involving successorship." *Firefly Equities LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010).

Courts have generally found parties to be "closely related" such that enforcement of a forum selection clause is "foreseeable" in situations "where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory." *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 2018 U.S. Dist. LEXIS 118477, at *11 (S.D.N.Y. 2018) (quoting *Prospect Funding Holdings, LLC v.*

8

*Vinson*, 256 F. Supp. 3d 318, 325 (S.D.N.Y. 2017)). *See also Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 259 (E.D.N.Y. 2013) (collecting cases). Courts have regularly found that non-signatory corporate executives and officers are "closely related" to a signatory company such that enforcement of a forum selection clause in an agreement made by the company was foreseeable. *See, e.g., Firefly*, 736 F. Supp. 2d 797, 799 (S.D.N.Y. 2010) (applying forum-selection clause to non-signatory president of signatory corporation); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22882137, at *5-6 (S.D.N.Y. 2003) (applying forum-selection clause to non-signatory chief financial officer of signatory corporation). Moreover, courts have found that such "closely related" non-signatory corporate executives and officers are entitled to enforce a forum selection clause against signatory parties suing them in connection with their work at the signatory company. *See, e.g., Lahoud v. Document Techs. LLC*, 2017 U.S. Dist. LEXIS 188162, at *12 (S.D.N.Y. 2017) (non-signatory executive officers could enforce forum selection clause because of close relationship with signatory company); *Citi Structure Constr. v. Zurich Am. Ins. Co.*, 2015 WL 4934414, at *3 (S.D.N.Y. 2015) (party that was closely involved in a transaction could enforce a forum-selection clause even though it was a non-signatory to the agreement); *Thibodeau v. Pinnacle FX Invs.*, 2008 WL 4849957, at *5 n.4 (E.D.N.Y. 2008) (non-signatory principals of signatory corporation could enforce forum-selection clause in suit relating to their work at the corporation).

In the instant case, it was foreseeable to HAL that the forum selection clause in its Client Agreement would be applicable to a lawsuit against the CEO of Advantage in connection with his work at Advantage. Indeed, HAL alleges that Guinan, in his capacity as CEO, had power to make all decisions for Advantage, and in fact exercised such power in his management of the HAL account. Am. Compl. ¶¶ 10, 12, 15. Thus, HAL concedes that Guinan both "had an active

role in the transaction between the signatories" and "had an active role in the company that was the signatory." *Prospect Funding Holdings, LLC*, 256 F. Supp. 3d at 325. Clearly, Guinan is sufficiently "closely related" to Advantage such that he may enforce the forum selection clause against the claims at issue in this case.

Finally, HAL invokes the doctrine of *contra proferentem*, which instructs that "if unable to determine the parties' intent based either on the text of an agreement or after evaluating admissible extrinsic evidence, the Court may, in some circumstances . . . construe any ambiguity against the drafter of the contract." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 957 F. Supp. 2d 316, 332 (S.D.N.Y. 2013) (citing *M. Fortunoff of Westbury Corp. v. Peerless Ins. Co.*, 432 F.3d 127, 142 (2d Cir. 2005)). The doctrine applies "only as a matter of last resort after all aids to construction have been employed without a satisfactory result." *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997) (internal citation omitted). Here, the text of the forum selection clause is clear. Thus, there is no ambiguity to construe against the drafter and *contra proferentem* is not applicable. The forum selection clause is enforceable and Guinan may enforce it.

### C. 1404(a) Public Interest Factors

The presence of a valid, mandatory forum selection clause means that HAL's choice of forum carries no weight in the section 1404(a) analysis and the Court does not consider private interests. *Atlantic*, 571 U.S. at 63. The "public" factors consist of "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (alteration in original) (citation and internal quotation marks omitted). The party acting in contravention of the forum-selection clause "bear[s] the burden of showing that

public-interest factors overwhelmingly disfavor a transfer." *Id.* at 66. The only statement by HAL that may be construed as appealing to any of the public interest factors is that New York is the location where Guinan and the people who attended dinner meetings with him reside, and where Advantage also has an office. Pls. Mem. at 1, 5. HAL has certainly not demonstrated that any exceptional circumstances relevant to the 1404(a) public interest factors undermine the "controlling weight" of the valid forum selection clause. *Atlantic*, 571 U.S. at 63. Indeed, Plaintiffs' choice of forum – a private interest that the Court cannot consider – appears to be the only factor that weighs against transfer here. Defendant's motion to transfer the case to the Northern District of Illinois is therefore GRANTED.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to transfer the case is GRANTED. The Clerk of the Court is respectfully directed to transfer this case to the Northern District of Illinois and terminate the motion, Doc. 20.

It is SO ORDERED.

Dated:  November 9, 2018
        New York, New York

                                             Edgardo Ramos, U.S.D.J.

11